Please be seated. Clerk, if you could call the case, please. 16.9.9. Will apply for Board of Education. Council, who are going to argue, please approach. Thomas Leder for the accountants of Board of Education. Patrick Deesey for plaintiff. Deesey? Deesey for Ms. Price. Okay. The usual rules will apply. 15 minutes per side. Keep some time for any rebuttal. And the microphone there is for recording that for volume. So if you want some of us to hear better, you might keep your voice up and for the people who are listening here today live. Okay? Yes, sir. Thank you. Good moment would like to reserve five minutes for rebuttal. Okay. Thank you. May it please the clerk, council. After Adela Price fell on the L.A.B. School's balcony, the board closed off the balcony. The fire bureau instructed the board to make several changes to the balcony, including posting an occupancy placard, to put railings on one side of stairways that did not have railings, and also to keep the stairways unobstructed. The board, however, chose to make additional improvements to the balcony. The board added a railing behind each seating area on the balcony. The board voluntarily constructed a guard fence at the front of the balcony. It added colored tread markings on the stairs and also painted the walls a lighter color. No governmental entity ordered the board to make those four improvements to the balcony. So some were voluntary and some were involuntary? That's correct. Okay. These voluntary improvements so changed the balcony that the plaintiff's attorney asked the jury whether the balcony was even the same balcony after showing pictures of the improved balcony. And what did your trial lawyer say when that very offensive argument was made? Nothing. He pressed the mute button. The board's attorney had filed a motion to eliminate to exclude that evidence and also objected before the board's principal testified to the photographs coming into evidence. Okay. I apologize for interrupting, but ruling on motion to eliminate is quintessentially an interlocutory order. What does interlocutory mean in this context? That's the order. They're still talking about it, okay? They're still talking about it. So the judge in the argument on the motions to eliminate or dueling motions to eliminate, the judge is going this way, going that way, saying it can come in for a limited purpose and not saying it can come in for negligence. So courts go in both ways. And when the evidence comes out, counsel doesn't make an objection in open court. He makes an objection through plaintiff's counsel, says he's going to be a nice guy and not say anything during the examination. But there's no objection at all during the entire course of this trial. There's no objection when the photographs are admitted into evidence. There's no objection when the plaintiff's lawyer, in violation of just about everything, says that this proves willful or wanton misconduct. How can we give you relief if you just sit on your hands? Well, the board's attorney did object before the principal testified to the photographs coming into evidence. One objection, and the court indicated during that same witness that it would be admitted for a limited purpose, and nothing after that. The board's attorney also didn't want to serve to highlight the photographs any more than the plaintiff's attorney was already. How would the trial court read his mind so that he, you know, believes that he's holding back on his objections so that he's not intrusive? I mean, how does the trial court then get to take any corrective action if, in fact, the evidence coming in shouldn't be coming in? I mean, if you don't object, what's the trial court supposed to do? Well, the attorneys in the trial court are already engaged in extensive argument on this issue, and the board lost the issue. The board's attorney also objected again before the principal testified, so I believe the trial court was well aware of what the board's objection was. The board lost that point, so. But the counsel was completely aware of what the court had indicated because before the principal went on the witness stand, trial counsel said that I'm just redoing that motion in limine. You've already ruled that they can be used for a limited purpose, right? And he was arguing all about foundation, foundation, foundation. At the time the photographs were admitted into evidence formally at the conclusion of the plaintiff's case, there was no objection to foundation. There was no objection to the use of the photographs for a limited purpose. The only objection was don't let them go back to the jury room. Just like before, he was only concerned that they not be used during opening statement. You know, the trial court tried to issue an order that was for a limited purpose. Trial counsel for the defendant did nothing to hold the plaintiff to that limited purpose, and plaintiff just ran with it. I think it's forfeited. I don't know how you can argue anything different. We don't believe it is forfeited because the board had already lost the point of the photographs coming into evidence at all. Lost the point where? Lost the point where? During the motion in limine. That was at the point in time pre-trial, motion in limine. It's still an open issue. So at the time that trial is going on and it comes up again, the board believes that it's not necessary to voice an objection again, just to renew the objection in the record to ensure that it's preserved? Is that your position? Yes, the board did renew the objection to the evidence coming into evidence. I think ultimately, if we go to the end instead of at the beginning, the real problem that you have is when plaintiff's counsel stands up and says a picture is worth a thousand words and proceeds to use the evidence to prove Wolf and Watton misconduct, which is in violation of what the court had indicated in its interlocutory order that it's only to be used for a limited purpose, and trial counsel didn't object. Didn't object. It's hard to ask for relief under these circumstances when it's used for the ultimate bad purpose and counsel remains mute. Well, the plaintiff's attorney did emphasize the photographs in his closing argument. However, since the board had already lost the point of the photographs coming into evidence, there was no need for the board's attorney to object again and interrupt the closing argument. Can I just ask you a question just for clarification? I thought pre-trial judge said, all right, they're coming for a limited purpose. That's it. But what were the reasons? Was that what happened pre-trial? It's really unclear from the transcript why exactly the trial judge allowed the evidence in. That's what your trial lawyer said. He said, as the court will recall, you've already ruled they can be used for a limited purpose right before the principal comes on the witness stand. So defense counsel acknowledges that the court had made a ruling that it was for a limited purpose. So you consider that he had already lost the motion? Yes, he had already lost the motion. The trial court. But he didn't lose it. The trial judge said it comes in for a limited purpose. And then when it comes in for other than a limited purpose, what happens? Well, the trial court in the order allowing the evidence in also didn't impose any type of limitation on the plaintiff and didn't make clear if that was even the reason why he was allowing the evidence in. Why didn't your trial counsel ask for that? I mean, you know, both of the orders were, I mean, I tried cases for almost 30 years. Both of the orders were, you know, not very effective. One said it was granted, but you can't, the plaintiff's motion is granted, but you can't use them in an opening statement. The defense counsel's order just said it was denied. Well, it wasn't denied in whole. It was denied in part. It said it would be used for a limited purpose. Neither order is of any benefit to somebody who wants to look at it later and try to figure out what was preserved and what was waived, it seems to me. Well, the board's attorney had asked in whole that the subsequent repairs be kept out of evidence, and the plaintiff was the one who argued the exception applied. Right. It's not clear from the transcript if that's actually the reason why the trial judge allowed the photographs into evidence. He said several times, you know, we'll allow it in as the current condition of the balcony, and that is evidence of subsequent remedial measures that should not have been admitted into evidence. I will acknowledge that, that the court was vacillating a little bit here and there, but there was nothing on the part of trial counsel to try to protect the rights of the Board of Education from misuse of the evidence that the court had ruled was going to be used at some point in time for a limited purpose. Well, in this case also, you know, the plaintiff's attorneys clearly knew what they were doing with the photographs. They also didn't attach any of the photographs to their motion in limine, so at that time either the board's attorney wasn't clear on which photographs would be used. Well, was the board precluded from asking about which photographs would be used? I mean, you know, you have two sides, so you know there are photographs. You know there are certain things that might be in photographs that you might not want to have the jury see. So even though plaintiff at the point in time that you're having this pretrial doesn't produce the pictures or the photos, did the board have any obligation to say, Your Honor, we'd like to see what pictures they're talking about? Well, the board, the plaintiff is also the one who argued that this exception of the involuntary versus voluntary changes applied. You know, the board had sought to keep all of the evidence about the subsequent remedial measures out of the record. Well, wait, the only thing that the government, the fire department, really said in this context is there should be handrails on all the stairs. Yes. And everything else was in the occupancy blanket. Everything else, the paint, the back rails, the front rails, all of it, that was all voluntary. The pictures show all of that. And defense counsel just let it all in. He didn't say anything about it. Well, the defense counsel had already lost the point of whether or not the evidence of the balcony's current condition would come into evidence. And the plaintiff, you know, obviously knew what they were doing in seeking to admit only the photographs that showed the voluntary change. Plaintiffs are going to try to do whatever they can. That's why you have a defense to say, Hey, cut it out. Where in here did the defense attorney say, Hey, cut it out? Well, by filing the motion and then also objecting before the principal's testimony. But he was objecting at that specific moment when Principal Skanes was coming up. He was all over foundation, foundation, foundation. And then never heard the word foundation for these photographs ever again. There was no indication in his cross-examination or redirect or whatever of Skanes that there was a problem with foundation, that she didn't have the requisite knowledge to say what the condition was before and what the condition is now. I mean, there was no, you know, nothing that was, the word foundation never came up again. And that's all he was talking about. And he acknowledged the limited purpose. And when the plaintiff's lawyer improperly makes that argument, there's no objection. I just, you know, you know, part of me wants to try to, you know, give you some relief here. But when you hit the mute button, it's hard to give it to you. Um, well, we do believe in this case, you know, that the trial court, you know, did not limit the ruling to saying that only the voluntary or the involuntary measures could be admitted into evidence. So it's not clear if that's the reason why. So since the board had already argued that all of the supplement repairs should be kept out and lost at that point. I totally agree with you, which highlights again the fact that this is interlocutory, meaning we're still talking about it. You know, because the case hasn't gone to the jury yet. The evidence hasn't been formally admitted into evidence. And when it is formally admitted into evidence, nothing. You know, there were multiple opportunities all along the way to clarify, to limit, to focus, and to prevent plaintiffs from making improper use of this evidence. And at every point along the way, there was nothing. The plaintiff's attorneys were the ones who chose to introduce the photographs that only showed the voluntary changes. In the photographs they had admitted into evidence, you can't even see the involuntary changes. So it's clear what their purpose was in using those photographs. They were never interested in highlighting the involuntary changes. And that is because in this case there's no evidence that the involuntary changes would have helped Ms. Price. The ceremony that she entered through already had a railing on it. And there's no evidence that the occupancy plaque guard would have helped her. We totally agree with you. You know, some of the voluntary modifications such as the guardrails between the seating areas and the lighter pink color may have helped prevent her fall. So that is why the plaintiff chose to highlight them in her case. We do believe that the trial court's error in admitting this evidence affected the outcome of the trial as your very state of the plaintiff's counsel stood. What specific error of the trial court with no objection by the defense attorney? What was the court supposed to do? Well, the court had already allowed in the evidence of the subsequent remedial measures. There were two orders that were a little murky. So what was the court supposed to do at that point if the defense attorney didn't do anything? Well, the trial court could have either granted the board's motion to disallow the evidence and or if he was, in fact, granting the plaintiff's motion, he could have included a limitation that only the involuntary changes could be entered into evidence. And it's all with no objection. And you've not made a plain error argument here, right? We have not, no. Okay. So after elucidating testimony from the principal about the guardrails, the plaintiff's counsel highlighted all of the voluntary changes by asking the principal if they could agree that the balcony was now a lot less dangerous than it was back when Ms. Price stopped. And what did the defense attorney do? The defense attorney objected to that question. And the objection was sustained. However, the jury still heard it and also heard the lead up. It was not only sustained, it wasn't answered. Am I correct in that, that the witness did not answer the question, the objection was sustained? That's correct. So there's nothing to strike in terms of an answer. That's right. There was no answer. However, the plaintiff's attorney's questions had also led up to that conclusion that the jury heard. And in the closing argument, he was even more blatant in using the voluntary changes and arguing that, you know, after Ms. Price fell, that the board fixed the balcony and that it was good that the board fixed it and it was good for the community, but it was not good for Ms. Price. So, again, arguing that the board's voluntary choice of improving the balcony would have helped prevent Ms. Price's fall and that that showed that the board acted with conscious disregard and not doing that before Ms. Price's fall. The exception exists in order to encourage property owners to make improvements that would enhance public safety without the risk that those improvements will be held against them. And the trial court's error in allowing this evidence in would encourage property owners to only stick with the bare minimum of whatever governmental entity may order. I agree with all of those principles of law. I think the only question is, you know, was there any onus, was there any responsibility from the board's attorney to bring to the court's attention maybe the lack of clarity in the court's orders, its vacillation, or to renew objections, or to request a sidebar, or to request that we revisit the motions in limine, something just to target the judge's role to say, we need to have a conversation again about this? We do believe that the board preserves its issue when it filed the motion in limine and also by objecting before the principal's testimony to the photographs being introduced into evidence. Can you cite us to a case, or more than one case, that says anything like an objection on appeal is properly preserved if in fact there is a ruling on a motion in limine? I'm not quite sure about that.  I'm arguing that that showed that the board waived the issue. It's just not enough. You have to go further. You have to preserve it after that, okay? And the question here is whether the one objection that is made before the principal goes on is sufficient to preserve all of the manifold issues that are raised by these photographs. That's the question. It was sufficient. The board's attorney didn't want to serve to further highlight all these voluntary changes. The plaintiff's attorney was already doing that enough. You know, this was a jury trial. The jury was hearing everything. So that's why the board's attorney recognized he had already argued and lost the point, made the objection before the principal testified in this case. If there are no further questions, I'll save the rest for rebuttal. Thank you. Good morning. Good morning. Thank you. May it please the Court. Counsel, once again, my name is Patrick Giese. I represent Plaintiff Appellee Idella Price. It's clear that appellate counsel is doing all the things on appeal they wished trial counsel had done during trial. There is no dispute, based on this record, that the nuanced argument that counsel has made between voluntary and involuntary depictions in the photographs that were published to the jury at trial was ever made before a defendant's post-trial motion. As a consequence, the trial... Well, it was actually made by you. You made that nuanced suggestion to the court because you told the court that the improvements were not voluntary, that they were, in fact, mandated. You're the one who brought up the nuanced argument. Yes, thank you, sir. That's exactly right. There was nothing before us at that time that led us to believe that these changes were anything but involuntary changes. There had been no testimony, and there was no other evidence in the record to indicate... When did you find out that these improvements had been made? When were the photographs taken? The photographs were taken approximately a week before trial. We had no indication that there was any catalyst to make these changes to the bailiff other than the fire code violations that were found some 14 months after the plaintiff's fall. And what part of the evidence in the photographs was not covered by the Fire Protection Bureau or whatever the agency is? The handrails depicted in the photographs were mandated by the fire code. The photographs themselves depicted other changes that the plaintiff was not aware, depicted anything other than what was required by both the standard of care and the Chicago building. You weren't aware until five days before when you decided to get some photographs of the gym. About the changes, sir? Yes, is that what you're saying? Shortly before, we had learned from, I believe it was Defense Counsel, I couldn't answer you directly, sir, as to how we learned that... Did you have some supplemental interrogatories or something? Have any changes been made to the gymnasium? Did your expert go out and examine the gymnasium before he testified? No, sir, our expert did not examine the gymnasium. Before he testified, he reviewed photographs of the condition of the balcony. All right, well, let's get down to the bottom line here, okay? You have an interlocutory order where the court has seemed to indicate that the evidence is going to be admitted for a limited purpose. Then there's an objection to a related but not identical issue during the testimony of the principal, and the court, again, says it's going to be used for a limited purpose. What is it about the word limited that you don't understand when you make the argument that you made in front of this jury? Your Honor, we believe that the photographs came in under the recognized exception under the Gone case out of the Fifth District. The court on several occasions said it would be admitted for a limited purpose. And in closing argument, were you the one who gave the first argument? I was not personally the one who gave the first argument, Your Honor. Okay, who gave the first argument? My co-counsel. Okay, Terrenzi, what is it, Philip? Phil Terrenzi. Okay, so in that argument, he held up the photograph and said, picture says a thousand words, this proves that they were, in essence, that they were willful and wanton because they fixed it. They went ahead and fixed it. And I can't think of anything in terms of an argument that is more completely the opposite of what the trial court had tried to rule on here. And I understand that defense counsel should have made an objection, but I don't know how you can defend that argument. That's the opposite of limited. That's unlimited. That's for the exact purpose that you can't use it for. Your Honor, to the extent there may have been improper argument in closing, I would suggest that the case law is very clear, that without an objection to improper closing argument, that issue was forfeited, and that's exactly what happened in this case. And I would add, Your Honor, that throughout the trial of this cause, the Board had numerous opportunities during written motions in limine to raise this objection, during argument, extensive argument on motions in limine, and during the examination of three Board witnesses, all of whom had knowledge of the pre- and post-occurrence condition of the balcony where they could have raised this issue. What about the argument that your colleague here makes that they were sort of lulled into, you know, silence by the statement before the principal's testimony that, you know, counsel for the defendant is in a gentlemanly fashion not going to interrupt the witness. And that's all, those statements were made by you, correct? Those were my words, Your Honor. Yes, thank you for that question. All right. So let's, talk to us about that and tell us why we should not be persuaded that you were, you know, sort of giving them a sucker punch. I'm glad to have an opportunity to address this issue. I would not characterize it as a sucker punch at all. That's why I'm here. I can speak directly to what the agreement entailed in the parameters. It was to preserve the grounds articulated in the defendant's written motion illuminate, meaning the rule generally, and the foundation arguments made in argument on that motion illuminate. That said, certainly not every conceivable basis that all counsel could come up with after the jury already rendered a verdict. And I would add, Your Honor, that it really, it was only on reply before this court that the defendant ever made the argument that they didn't need to make a specific objection on this particular issue. Was it made in post-trial or just on appeal? It was only made in reply, Your Honor. There's no. Okay, I got you. It was only made on reply before this court. That is near impossible argument for the plaintiff to possibly respond to. Understood. What was your understanding of the court's ruling on the initial motions illuminate where the Board of Education was sought to keep out the voluntary changes? What was your understanding of the court's order? Thank you, Your Honor. Our understanding of the use of this evidence was that it was coming in under the Gaunt exception. It was admittedly a murky ruling. But if you review the argument on motions illuminate, it's clear that plaintiff's intent in our dueling motion illuminate, we do cite to the Gaunt case. It was clear that our intent was to offer this evidence to show negligence under the Gaunt exception because the public policy reasoning behind involuntary action for subsequent remedial measures simply does not apply. The subsequent remedial measure rule is not intended to protect non-conscientious, non-well-meaning defendants who are forced to improve their property. I think the court would agree. But some are voluntary, some are involuntary. That's right, Your Honor. We learned that during post-trial motion that some of the evidence depicted in those photographs was voluntary and some of it wasn't. We believe it was all voluntary and that's where our papers came from at the trial court and that's where our arguments were based on the trial court under this Gaunt exception. And I would also add that the record in this case has no evidence from any witness that the board put on or that plaintiff put on that any of these efforts were anything other than required by the fire code and that the fire department inspection was the catalyst for any change at all. Well, wouldn't that be incumbent upon you, though, if you're getting this evidence admitted pursuant to this exception, wouldn't it be incumbent upon the plaintiff to lay the appropriate foundation that they were all, in fact, involuntarily made rather than claiming surprise on post-trial? We did have, thank you, Your Honor, for that question. There was a competing motion in Luminae that barred evidence of the fire code inspection. So we were not permitted the opportunity to lay that foundation. That evidence had been barred. That issue, I don't believe, is before the Court today. And as I said, there was no indication given to us before that time that these efforts were anything other than involuntary. And there were many opportunities to have called our attention to that by defense counsel. What was your understanding of the board's motion in Luminae? If I'm understanding you correctly, you had no indication prior to the conclusion of trial that the modifications were both voluntary and involuntary. What was your understanding of the board's motion in Luminae? If all of the improvements or all of the modifications were involuntarily made, why would the board be bringing a motion in Luminae to preclude the admission of any of the other evidence? What was your understanding about that? Thank you, Your Honor. Our understanding was that the board was simply bringing what amounted to an omnibus motion on the subsequent remedial measures rule generally. I don't know that the board was aware at the time they filed this motion of this exception that's named in gun. It's a relatively rare exception. This is possibly one of the reasons why the voluntary versus involuntary distinction didn't come up until after the jury had rendered their verdict. Our understanding of that motion, to put a fine point on it, Your Honor, was simply that they were barring subsequent attempting to bar subsequent remedial measures, any evidence thereof, under the general rule, not that they had even considered the exception. Okay. But what did you think the judge meant when he said for a limited purpose? What did you think that meant? Your Honor, thank you for that question. I don't have a good answer to that question. I can't state. Well, did you ask him what does that mean, Your Honor? We did not ask for a clarification on that ruling. No, we did not. Just in normal conversation for a limited purpose, what do you think it means? Sure. In this particular instance. Why would the judge say it if it didn't mean something? Thank you, Your Honor. I don't have an answer to that question. Perhaps we should have sought clarification, but in light of the exhaustive argument on this motion and the fact that the court was permitting this evidence, we proceeded under the same reasoning that we argued to the court, that it was admissible under this recognized exception. So to sum it up, it's right before trial you find out from defense counsel that there have been changes and you go out and get some photographs of it and you're unaware, you know, specifically what it is that the fire bureau has ordered, and so it's all a surprise when you go out and try the case and this is your main argument to the jury that the picture says a thousand words and it all just was foisted on you in the weeks before trial. I would suggest that it was one of our arguments to the jury. I wouldn't say it was our main argument to the jury. I think the manifest weight of the evidence in this case does weigh heavily in favor of Ms. Price and supports the jury's finding of both Wolfone-Watten misconduct and a verdict in favor of the plaintiff. The jury heard a lot of other evidence besides this. No, no question about it, but it seems to me that reading the argument as we have, that your colleague was clearly arguing that the evidence was to be considered by the jury for an unlimited purpose, not a limited purpose, to prove Wolfone-Watten misconduct. I don't think there's any question that in argument this evidence was used to show breach, but again, Your Honor, that would suggest that it was proper to use the evidence in that fashion under the Gantt case. Okay. I would add briefly to my manifest weight of the evidence argument that in addition to setting aside the issues of forfeiture and the subsequent remedial measure rule themselves, the manifest weight of the evidence does weigh heavily in favor of Ms. Price and offers great support for the jury's verdict and the jury's finding. Are they arguing anything about sufficiency? Just the visibility of the evidence? Yeah, I don't think there's any argument about that. I mean, they're talking about abuse of discretion with admission. They're not talking about sufficiency. Thank you, Your Honor. I only add this argument in light of the Supreme Court's decision in Schaffner that where post-deference photographs were permitted and it was found to be harmless error because the weight of the evidence was so heavily used. I worked on that case, so I'm familiar with that. Thank you. Okay. You can wrap up, Counsel. I would add, thank you, Your Honors. I would simply request that the Court affirm the trial court unless there are further questions. Okay. Thank you. Thank you. It's interesting in this case to hear plaintiff's counsel claim that they only learned post-trial that the photographs they showed showed voluntary changes because in their motion to eliminate to seek to allow the evidence into the record, they attached the Fire Bureau report. The Fire Bureau report clearly says what it says about the occupancy placard, the railways, and keeping the stairways unobstructed. So there was absolutely no surprise here. That was duly noted. Yeah, so their expert testified about what the involuntary changes were. So there was no surprise here. I guess the only surprise is that trial counsel at AA could keep hammering you on it because, you know, you obviously weren't there. But the only surprise here is that there were not multiple objections, and especially when the photograph was used for an unlimited purpose of closing argument or for the ultimate harmful purpose, that there's no objection. We believe that the trial court allowed the evidence in for an improper purpose. You know, the plaintiff's counsel admitted that it was a murky order. Before the principal testified, when the board objected, again, to the photographs coming into evidence, the trial court advised the board's attorney that in closing argument, he could, quote, simply point out that we were showing these for a purpose to show we had improved it or whatever without conceding anything. So the trial court's understanding of that unlimited purpose was, in fact, to allow all the evidence of the subsequent repairs in, as a matter of fact. He never said, hey, you can only introduce evidence of the involuntary measure. He may have been reminding the plaintiff's counsel of what the plaintiff's counsel should have understood his ruling to be, but that didn't prompt anything in terms of an objection. I mean, if there was an objection in closing argument to the ultimate purpose that they wanted to use the evidence for, the court then would have the opportunity to sustain the objection, move to strike the argument, move to strike the evidence that relates to anything that was not admitted for the proper purpose, and perhaps save the error that is in this record. There's plenty of error here. There's no objection to it. The trial court never indicated that the limited purpose was for this involuntary versus voluntary exception. The court had already argued and lost the point. The trial court let it all in. And then trial counsel's handwritten order should have said more than denied. Okay? It should have said denied the court finding that it can be admitted for blah, blah, blah purpose over counsel's objection. To just say it's denied doesn't preserve the error. It's just not enough. Well, the trial court never indicated that that was why they were allowing the evidence in. The trial court just allowed all of the evidence in about the subsequent repairs. And during the plaintiff or the principal's testimony, the board's attorney also did object to foundation when the principal was asked about the grip tape on the stairs. So there was an objection to foundation on that. So the trial court's limited purpose in this case was to prove or show that the board improved the balcony, and that was the improper evidence of the subsequent remedial measures. And so we ask that you reverse the decision in this case. Okay. Thank you. We will take it under advisement, and our opinion will be issued forthwith. We're adjourned.